Case No. 245700, Generation Changers Church v. Church Mutual Insurance Company, argument not to exceed 15 minutes per side. Mr. Snodgrass, you may proceed for the appellant. Good morning. Good morning, and may it please the Court, my name is Joe Snodgrass, and I represent the Church Generations Changers Church, and I would request four minutes of rebuttal. Very well. There are two primary categories of legal issues here. One relates to subject matter jurisdiction. One relates to eerie-related legal issues. I'd like to start briefly with the Article III subject matter jurisdiction. As this Court is aware, there are a handful of five circuit court decisions addressing the issue of the ability of a resident class representative to represent others from different states. I want to just touch base on an unintended consequence of what could happen if the Court adopted the insurance company's Article III argument. And that is, it's going to drive more nationwide and multi-state class actions back into state court. Let me say that again. It's going to drive more nationwide and multi-state class actions back into state court. How? Let me give the Court a hypothetical example. I'll call this the Ford example, but assume that a single Michigan resident sues Ford in a nationwide class action in Wayne County. Okay? Now, if this Court, well, today, that case is removable under CAFA. Why? Because the CAFA jurisdiction statute allows removal when there's a single class representative purporting to represent a nationwide class. The Court looks and sees, oh, there's more than one-third of residents not in Michigan in this class. It's allowed to come into federal court under CAFA jurisdiction. If this Court holds that there's no Article III subject matter jurisdiction when a Michigan plaintiff seeks to represent somebody from Minnesota, for example, or any other state, then there's no federal jurisdiction for that claim. And CAFA also makes clear there's no federal jurisdiction for a Michigan versus Michigan lawsuit. In other words, if it's just the Michigan Citizens versus Ford Motor Company, there's no federal jurisdiction for that under CAFA. And so if this Court holds there's no federal jurisdiction for the remaining claims, there's going to be more state court, nationwide, and multi-state class actions. Now, this Court may say, well, wait a second, Mr. Snodgrass. We're talking about Article III. You're talking about CAFA jurisdiction. Two completely different things. It's not. Did you argue any of this in your brief? I don't remember any of this discussion. No. I'm just talking about the unintended consequences of this. And so I'm not making policy arguments. I think that's really interesting, but you have a limited amount of time here. Right. Well, all I want to do is point that out. On this jurisdictional question, I guess what I don't understand, and maybe it's a better question for your fellow attorney here, but it doesn't seem to me it matters whether we apply the standing approach or the class act, the class certification approach here. It seems to me you come to the same conclusion anyway, that we have jurisdiction. Okay. I'll move on. Do you agree with that? I do agree. And the district court did find that not only does the individual plaintiff, in this case the church, have standing, every member of the class also has standing. They've all suffered injuries. So unlike the case in Searly or some of these other cases where you have a class that includes uninjured people, that's not this case. I guess the point is I don't think we have to really pick between Blum and Sousna in this case because it leads to the same conclusion anyway. As long as this court finds there's jurisdiction. You don't care how we do it. I don't care how we do it. I'll move on. Let me talk about then the eerie questions that bring us here. And even though we are the appellant, we think the district court and Judge Trauger's decision was well-reasoned. We only have a very narrow dispute with the decision. And to understand our dispute, it's probably necessary just to step back for half a second and understand why the court certified the four-state class. She found that the predominating issue, whether you want to call it breach or contract liability or contract interpretation, that liability issue, that predominating issue, she held, I don't even have to have a trial on that issue for four states, Arizona, California, Illinois, Tennessee, because the state supreme court or regulation has decided it. No trials necessary. No manageability issues whatsoever on the predominating issue. All we're asking for, we're not asking for this court to broaden the class. All we're asking for is remand with instructions to the district court to conduct an eerie analysis at least to the point where it can determine whether there's even a trial necessary on the issue, the predominating issue of liability. Because in these other states, if there's never even going to be a trial that's necessary, it's hard, I mean, I'll never say never, but it's hard to conceive of why this case would be unmanageable if we can decide for thousands of people the predominating issue without even having a single juror come to court. I guess one thing that you're sort of pointing us to is that it does seem really peculiar here that for whatever reason, she just ignored what seemed to be binding Sixth Circuit decisions with respect to Kentucky and Ohio on the very issue. So that's the point you're making, right? That's the point we're making, but Texas is probably the most acute example of where we thought the eerie analysis went off the rails. She does an eerie analysis for Texas, includes, hey, I've got to interpret the policy. I believe I have to, under Texas law, I have to interpret the policy in favor of the policyholder. I don't think under Texas I even have to have a trial. But she says, but I don't want to certify because I might get overruled by the state Supreme Court later. Well, if that's the case, you could refuse certification of darn near any diversity case, because it's always the possibility when a court sits in diversity that its decision is going to be wrong. But ever since Erie, all the progeny of Erie say, hey, because Congress forces these cases into federal court, everybody deserves their day in court, so you decide state law as best you can on the day in question. I can't get this national class in state court because of CAFA. And so because of that, we have to at least conduct the eerie analysis. Now, I know ‑‑ Basically, she's just saying that she's not going to make an eerie guess. And are you aware of any authority that supports ‑‑ and I'll ask your opponent the same question, obviously. Are you aware of any authority that allows a district judge to say, I'm not going to do the eerie analysis because I might be wrong? No. And, in fact, when this court did the Searley case, the mammoth, ugly case with 33 lawsuits, 60 causes of action, 26 states, all the problems, this court, the dissent, the trial court, the majority, all did the eerie analysis. And because if you don't do the eerie analysis, you don't know how manageable or unmanageable the case would be. So that's ‑‑ I see that I'm running up against it. But that would be our main point. And I'll hold my rest. Very well. Any further questions, Judge? No. Thank you. All right. You'll have your four minutes rebuttal, Mr. Snodgrass. Good morning. Good morning. My name is Ryan Strain. I'm with the Baker Donaldson Law Firm in Memphis, Tennessee. And I represent the defendant, Appley Church Mutual Insurance Company. I'm just curious, Mr. Strain, because I didn't go back and look at the underlying briefing before us. But did you argue to her that she could just disregard our decisions involving Kentucky and Ohio and not even address whether the decisions in Mississippi, Missouri, and Texas that exist were persuasive? No. What we argued ‑‑ So she came up with this idea on her own? I don't think so. We argued that the law is unclear in those states. Now, the Sixth Circuit has issued some opinions related to Kentucky and Ohio law. But the actual state judiciaries have not clearly spoken on those issues. Now, we have cited briefs. So that's authority for a district court to ignore decisions of this court? No. And I don't believe that the court was saying it was ignoring this court's decisions. What it was saying is that this court's decision is one aspect of the Erie analysis to look into. But it must also view state court decisions and other authorities as well. But she didn't do that. We think that by looking at the ‑‑ She basically said it's hard and she might be wrong. So she didn't do it. Is that an unfair characterization of the end of her opinion? I don't think it's completely fair, no. I think that she analyzed all the law that was presented to her and simply did not find that the law was clear in those cases. And for those reasons, thought that those issues of having to conduct multiple Erie analyses for multiple states on the allegedly predominating question of law identified by generation changers as well as subsidiary questions of contract interpretation would simply overwhelm the day‑to‑day adjudication of the case and turn it into not a case about whether labor should be depreciated in the states at issue but her having to go back and make all of these decisions and that would just overwhelm what she needed to do in the case. But again, do you have a case that says she doesn't have a duty to do that? We've cited ‑‑ well, one, I think this court's spirally decision, while not directly on point, supports that issue where, again, the court talks about high cost to a legal system asking one district court to understand and apply multiple causes of action across multiple states and having to be the one decision‑maker for consequential state law decisions. We've also cited decisions, particularly out of the Third Circuit, the NRA school asbestos case mentions that at some point there does become where the decision of finding whether there are variations in state laws just overwhelms the other issues in the case and those individual decisions, those individual determinations predominate over the common questions that may otherwise exist in the case. Did she actually say that it would overwhelm this case if she had to do that or did she say she didn't want to do it because she might be wrong? Her ‑‑ the language, and I don't have the opinion in front of me, but it was that having to do all of those eerie cases, I do believe she said would overwhelm the adjudication of the other ‑‑ I'm trying to find if I have a note on that. So it would be hard, but just because something's hard doesn't mean it doesn't need to be done. Her ruling that it's not clear what the state law is, I mean in a diversity case we have to predict as best as we can how the state Supreme Court would rule and that's the standard as opposed to whether it's clear, isn't it? I think the context that the case was before the district court is important as well. We're here on a Rule 23 classification decision. It wasn't a dispositive motion seeking a judgment with respect to the state's laws. I think that the court is able to consider whether all the additional work it's going to need to do to make an eerie analysis affects that predominance question. Okay. I would also like to address the standing issue. Various courts have shown two approaches to deciding whether a named plaintiff may assert claims arising under other states' laws. The Sixth Circuit and the Supreme Court have not clearly spoken on this issue. Why does it matter? Why do you win on one and lose on the other? Because here we are challenging the standing of a named plaintiff here at Generation Changers Church to assert claims that arise under other states' laws. The representative plaintiff is not asserting claims on that party's behalf and other states. It's a representative claim on behalf of everybody else. It seems to me if you're right, there is no such thing as a class action. I don't think that's correct, Your Honor. The Fox decision wasóthe Fox v. Saginaw County decision from this court was clear that the court must look at standing before the merits. And we believe here that you have to addressóhas the nameóso you have to look ató is the named plaintiff able to assert claims? Because there are certain claims under multiple states' laws. On behalf of other people in other states. Correct. That is the essence of a class action, isn't it? Well, but the unnamed class members are not parties to the case until class certification.  And so if you lookóyou have to look at standing at the beginning of the case. There's no question that this plaintiff had standing in the federal court in which it was filed. Correct? It had standing to assertó I'm not contesting that. No, it has standing to assert its own individual claims in Tennessee court. What it does not have standing to do, though, is assert claims arising under Mississippi stateó under Mississippi lawówhen it hasn't been injuredóhasn't alleged an injury underó But you're assuming in what you just said that the claims being asserted in other states are on behalf of this plaintiff as opposed to on behalf of the unnamed class members in those other states. Am I wrong about that? I think that's the way it has to be looked at in this situation. Without a named plaintiff who has actually been injured under that state's law and can actually traceó without a named plaintiff in each state in a class action to satisfy the constitutional standing requirement. Yes. Do you have a case that says that? We haveóthere's at least 18 decisions from within district courts in the Sixth Circuit that have adoptedó Do you have a binding decision that says that? Binding decisions? We think that, again, the Fox decision is supportive of that analysis as well as Supreme Courtó That's the Indian tribe case? No, Fox was the case regardingóit was the juridical link case, you may remember. Yes, the issue there was one plaintiff was trying to sue a bunch of different counties where he only had property in one county. Correct. So he could only sue one defendant. That was the issue there. Correct. We don't have that because ofó And that's not what we'reówe're not relying on a juridical link doctrine for purposes of this. What we're relying on Fox is that Fox says you have to address standing for the merits. You have to look at the named plaintiff's standing and whether the named plaintiff has an injury underóto assert for each claim it's bringing. And here we don't think that is true. We also believe that the Supreme Court's opinions in TransUnion and Spokio also have shifted focus toó What doesn't the plaintiff have standing for? He's asserting a breach of contract claim. I understand there are different laws, but he's asserting a breach of contract claim. What doesn't he have standing? How does he not have standing to assert a breach of contract claim? He has standing to assert a breach of contract claim under Tennessee law. The plaintiff here has no connection to any state other than Tennessee. They do not allege any injury under the nine other states' laws that they are asserting claims on behalf of. There's also no causal connection between any alleged breach of the law by Church Mutual in Kentucky, for exampleó It just seems to me that what makes your argument really hard is that in this case, it's the same defendant in every state. It's the same claim in every state in the sense that it's a contract, and it's the same contract in every state. So you're not going around dreaming up a new cause of action in different states against different defendants. It's all the same. I thinkówell, if you look at, for example, the Western District's decision, Rivers of Life, which we referenced in our case, the court there analyzed all of the same states' laws that are at issue here with respect to labor appreciation. The court found material differences in those laws and recognized that they were different claims. Again, nothing that this court or another court could not issueó All breach of contract claims that you're referring to? No, they're breach of contract claims. All breach of contract claims. Okay. Yes. And, again, I think that a Supreme Court saying such as, ìTransunion standing is not dispensed in gross. Plaintiffs must demonstrate standing for each claim they press.î So how do you maintain a class action, not from the Rule 23 standpoint, but from the constitutional standing claim that you're making? How would this claim properly be brought in one action? In one action, the plaintiffósimilar to the Spirley case, in that case there were multiple named plaintiffs asserting claims under various states' laws. So you'd have to find one plaintiff in every state. You would need a named plaintiffó And then you'd be satisfied. Yes. Okay. You would need a named plaintiff that had suffered an injury under each state's law to assert that claim for breach of contract. All right. And I think also looking at the clarity that is provided by what we're asking this court to do. As you see, I've identified 18 cases following the standing approach that we are asking the court for here. There's a similar number asking the court to defer that question of standing until class certification. But if you adopt the standing approach, district courts know from the get-go that what they need is a named plaintiff who has been injured underó or a named plaintiff may not assert a claim unless it's a resident of that state or has been injured under that state's law. I'm sorry if you've already answered this, but do you have any court of appeals decisions from any circuit that says what you're saying? No, but we do believeó So we would be riding on a clean slate here. You would, but, Your Honor, we think that this court has never shied away from taking a position that may be seen as at odds with other circuits when it believes it's right under the law. Well, that's a different question. There aren't any other circuits that go either way, you're saying, right? We think that the other circuits that have addressed these issues, that the decisions rely on either issues where the stateó for example, the Seventh Circuit's decision that Generation Changer cites, that's actually a case that was brought under Illinois law only. That's the first decision that they've cited that other circuit courts reflect, but it's not on point. Again, we think that, again, this court's Fox decision, where you look at the standing of the named plaintiff at the beginning of the case, and that's what you have to see, does that named plaintiff have standing to assert each claim that's being brought in the case? We think that is the most relevant authority from the circuit court level. Again, it's not directly on point, but we think it does provide ample support for the position. Again, multiple district courts across the country, I was adding them up today, just since the briefs have been filed in this case, nationwide there have been 11 district courts that have adopted this standing approach that we're requesting. We're not asking this court to do something that other reasoned jurists have not already reviewed and determined is the correct thing to do. There is support in the case law. You would be the first circuit court to be clearly stating this view, but that would give guidance to district courts to know when they have to take all these steps to analyze what could be dozens of states' laws when there's only one party from one state and hasn't been injured under the state's laws. Additionally, if you look at discovery obligations with multi-state class actions, if the standing decision is not made on other states' laws at the beginning, the defendant is subject to burdensome discovery in multiple states. Here, Generation Changers was subject to multi-state discovery in 10 states' worth of insurance claims, despite there being only one named and willing plaintiff from one state. And the district court ultimately certified a class with only four states. Other district courts, other courts have recognized that by not addressing the standing issue at the beginning, there are practical case management issues that result. Okay. Any further questions? No. Judge Matlis. And so, Your Honor, we would request that you remand with instructions of the district court to dismiss all the non-Tennessee claims. If you do find there is standing, then we request that you affirm the court's holding that Generation Changers failed to demonstrate predominance for its entire 10-state class. Very well. Thank you. All right. Rebuttal. I will be addressing first the class certification issue. Your Honor asked whether or not the district court based her decision on the fact that she might be wrong. And her quote literally is, The court stresses, however, that this is merely its best guess as to what Texas law is in on the subject, and that guess may be wrong. While the motion to dismiss requires the court to resolve the uncertainty in one way or the other, the presence of such uncertainty may, as this court will address later in the decision, bear on the question of whether Texas-based claims can be part of the class action. So the fear of being wrong on the eerie guess was, in fact, at least for the State of Texas, clearly stated as a basis for the denial. As it relates to the issues of subject matter jurisdiction, again, I just caution the court that when we talk about quote-unquote Article III standing, what we're talking about is subject matter jurisdiction. And if this court does hold there is no standing or subject matter jurisdiction for this multi-state class action, that is going to result in more cases being venued in state court, despite Congress' intention in CAFA to have all such cases be in state court. I think what they're just saying is go find a named plaintiff in every state, the ten or so states that we're suing in. Just find one named plaintiff for all class actions, not saying kick everything to state court. Well, right. But, I mean, the whole purpose behind CAFA is to try to get cases into federal court as opposed to avoiding it. Now, for example, take the State of Texas here. If we added named plaintiffs from Texas, there may be personal jurisdiction objections, specific personal jurisdiction objections by having a Texas person. But you don't even need to have a representative being a party. In other words, the court here can appoint an unnamed class member as a class representative later on in the case. The federal rules of civil procedure don't require that a class representative even be a party to the litigation to begin with. That's what kind of makes this standing argument a little bit of strain. There's so many tools that a district court has. If it thinks it needs an additional rep, you know, there's express rules on creating subclasses. There's expressed things about bifurcating, changing procedures, et cetera. If the court wants or requires or believes it needs an extra class representative, it certainly has the means to do it. There was no request here or belief here that the court needed additional reps and multi-parties for no reason for purposes of Arizona or California or Illinois or Tennessee. And the defense doesn't argue otherwise. And really, why is that? It's because when this person, when the church tries to prove its claims, it's going to be based on the same evidence everybody else is. It's going to be based on the same contract, the same legal arguments about breach. And so the seminal issue really is going to be advanced by one person adequately for everybody. Why have additional reps for no reason, just to drive up the cost of discovery? So that's kind of the concern as it relates to the subject matter jurisdiction. I'll just say this in conclusion. As the 11th Circuit, the most recent circuit to address this says, all circuits which have addressed whether a plaintiff can represent unnamed class members who claims fall under different states' law have concluded it as a question that concerns Rule 12b-6 or Rule 23, not Article 3. And the 1st, 2nd, 4th, 7th, and 11th District's circuits have so ruled. The insurance company is asking you to create a circuit split on this issue. The trial court cases that the defendant cites in the 28J letters, if you read them, I think they cited 11 or 12, all of them except for one didn't even mention the circuit court consensus, the five circuit courts that go the other way. Didn't even mention it. Nobody even briefed it adequately. The Rivers of Life decision they cite, analysis is in one sentence without any citation of authority. So, anyways. Well, I was going to ask you, how do you think that all these district courts got it so wrong if your position is correct? You think it just wasn't adequately presented in any of those courts and the judges didn't catch it? Literally. Literally. I mean, let me ask, well, let's take this, like I said, I know, unfortunately, there's some bad briefing of bad plaintiff's attorneys and bad attorneys that may not do it. But if you're a district court judge and you understand and appreciate there's a consensus of five circuit courts and no circuit courts going the other way on this issue, are you really going to hold there's no subject matter jurisdiction? I don't think many courts would go the other way if properly alerted to the circuit consensus. And clearly, Judge Trauger, the district court here, was aware of it. She relied upon it. And that was the basis for her Article III ruling. Thank you. Any further questions? No. All right. Thank you. Thank you, Your Honor. Cases submitted, you may adjourn court.